FARMERS MUTUAL INSURANCE COMPANY *v.* SISK.

4-6542                                          156 S. W. 2d 895

Opinion delivered December 22, 1941.

*J. H. Carmichael, Jr.,* for appellant.

*W. V. Thompson* and *R. W. Tucker,* for appellee.

GRIFFIN SMITH, C. J.    John M. Sisk owned a house in which his son, L. N. Sisk, had furniture. Henry Hudson is soliciting agent at Batesville for Farmers Union Mutual Insurance Company. The company's home office is in Little Rock. Prior to February 24, 1940, a single policy of fire insurance for $500 had been issued on the house and contents, and delivered to John M. Sisk. It was unsatisfactory, and in lieu two policies were written, one insuring the house for $300, the other, for $200, covering L. N. Sisk's personal effects.

Hudson delivered these policies to John M. Sisk. Before delivery, the agent had written, asking that the premiums be paid. Not having received a response, Hud-

son called upon Sisk and discussed with him the question of payment. Sisk had stated he could not settle at once. After assuring Hudson that he would go to Batesville and pay, Sisk (according to Hudson) said, "You are not afraid of [my credit] are you?" Hudson replied, "Not a bit in the world; I wish I had $500 on you." Sisk then said: "You will just have to wait, and I will be up there in a day or two." [1]

Hudson then returned to Batesville, leaving the policies with Sisk. This occurred during the latter part of February. The fire was March 2.

Subsequent to the fire Douglas Bradley, appellant's assistant manager, went to Batesville and in company with Hudson called on Sisk. Hudson testified that ". . . Mr. Bradley fixed the property at a total loss, I suppose. Everything was burned down and all the property in the house was destroyed."

L. M. Sisk, prior to trial, went to California, and was not a witness. John M. Sisk testified that from his knowledge of household furniture and equipment, market value of the personal property destroyed was $300. However, he further testified that salvage amounted to $40 or $50. This was what he termed "a rough estimate." It was objected that this was not competent. In view of the fact that the policies had been recently written and that Hudson personally inspected the house and its contents, we will not disturb the jury's finding that the loss was $160. This estimate seems to have been arrived at by taking the face value of the policy and crediting it with $40 of salvage, as testified to by Sisk.

[1] The policies contain provisions for cancellation by the insured, or by the company. If the company exercises such option, five days' notice must be given. There are also conditions permitting the company ". . . to take all, or any part, of the [insured] articles at the agreed or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within thirty days after the receipt of proof of loss herein required." [By certiorari there was brought to this court the motion of L. N. Sisk to reform the verdict. The original record contains a similar motion in behalf of John M. Sisk. Also, by certiorari, the motion of John M. Sisk for assessment of penalty and attorney's fee was brought up].

The jury rendered a verdict for $250 covering John M. Sisk's loss. There is no evidence from which less than a total loss could be found. Hudson testified that the house was completely destroyed. Appeals questioning the judgment for $160 in favor of L. M. Sisk, and that for $250 in favor of John M. Sisk were prayed. There are also prayers for appeals from the court's action in refusing to award penalty and attorney's fees in each case.

From its verdict for L. M. Sisk, the jury deducted $3.80, representing unpaid premium. Likewise, from the award to John M. Sisk, $5.70 was deducted for premium. These charges were proper. However, we find no basis for allowing John M. Sisk less than the face of his policy, after the premium has been paid. But that question is not presented; neither is the allegation that the court erred in not allowing penalty and attorney's fee. Plaintiffs below (appellees here) were granted an appeal, which was not perfected within ninety days. The defendant's appeal was lodged more than ninety days after the court overruled motions for new trials; but plaintiffs did not pray a cross-appeal to this court. Hence, their assignments must be treated as having been abandoned. *Dent* v. *Adkisson, ante,* p. 176, 157 S. W. 2d 5.

The remaining question is whether venue was in Independence county. We think it was. The Co-operative Union (appellant) was formed under authority of Act 14, approved February 11, 1897, as amended by Act 302, approved March 24, 1917; Act 91, approved February 19, 1919; and Act 134, approved March 14, 1929. (Pope's Digest, § 7943, *et seq.*)

"Articles of Incorporation," as printed on the policies, and the by-laws, do not require that operations of the insurer be conducted in restricted territory; hence, it may function in any county of the state. Summons was issued by the clerk of Independence circuit court and served by the sheriff of Pulaski county upon a proper official of the insurance organization in Little Rock.[2]

---

[2] Compare *Grand Court of Arkansas, Order of Calanthe* v. *Carter,* 184 Ark. 819, 43 S. W. 2d 531. [Section 6091 referred to in the second headnote is § 7876 of Pope's Digest. See, Act 181, approved March 9, 1939, for legislation affecting insurance companies not authorized to transact business in the state]..

We do not find any statute restricting venue to the county in which appellant's principal place of business is located. It is conceded that appellant has an agent who maintains a place of business, or at least does business, at Batesville and throughout Independence county. The policy of insurance it delivers through the Batesville agency expressly states a corporate capacity. It was, therefore, subject to be sued in the manner shown.

Affirmed.